**Daron BARGE, Plaintiff–Appellant,**

v.

**Athel RANSOM, Defendant–Respondent.**

No. 23329.

Missouri Court of Appeals, Southern District, Division Two.

Oct. 5, 2000.

Petition for Rehearing and Transfer Denied Oct. 30, 2000.

Application for Transfer Denied Dec. 5, 2000.

Robert A. Lynch, Springfield, for appellant.

Jerry M. Kirksey, Douglas, Lynch, Haun & Kirksey, P.C., Bolivar, for respondent.

JAMES K. PREWITT, Judge.

The issue presented at trial and here is whether statements made regarding a police officer in a complaint to a police department and investigated following department-mandated procedure are protected by an absolute privilege or a qualified privilege. The parties agree that this question is one of first impression in Missouri.

Plaintiff, a Springfield Police Department officer, claims that a complaint Defendant made to the Springfield Police Department contained false and malicious accusations concerning Plaintiff's conduct as a police officer, harming his reputation. Defendant counters that the statements that he made are absolutely privileged because they were made through the department's official complaint procedure. The trial court determined that the statements are protected by an absolute privilege and granted Defendant's motion for summary judgment. Plaintiff appeals, contending that the statements are protected only by a qualified privilege.

In reviewing the grant of summary judgment, review is "essentially *de novo*." *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo.banc 1993). Whether summary judgment was properly issued is a question of law, thus an appellate court does not defer to the trial court's order granting summary judgment. *Id.*

Generally, in a defamation action, the court must first determine whether the statements complained of were defamatory. *Pape v. Reither*, 918 S.W.2d 376, 379 (Mo.App.1996). However here, the only issue is whether the allegedly defamatory statements are protected by an absolute privilege, as held by the trial court in granting Defendant's "Motion for Summary Judgment as to the Issue of Absolute Privilege."

*Turnbull v. The Herald Co.*, 459 S.W.2d 516, 520 (Mo.App.1970) states:

Based upon public policy the law recognizes certain communications to be privileged, and, as such, not within the rules imposing liability for defamation. A privileged communication is one which would be defamatory except for the occasion on which or the circumstances under which it is made. Privileged communications are divided into two general classes: 1) those which have an absolute privilege and 2) those that bear a qualified or conditional privilege. [Citation omitted.]

Cases in Missouri establish that an absolute privilege is given only in limited situations where there is a policy of permitting complete freedom of expression without inquiry into motives, including judicial, quasi-judicial, legislative or executive proceedings, and situations where the communication is provided for and required by law. *Hester v. Barnett*, 723 S.W.2d 544, 557 (Mo.App.1987). *See also Wright v. Over-the-Road and City Transfer Drivers, Helpers, Dockmen and Warehousemen*, 945 S.W.2d 481, 492 (Mo.App. 1997).

■ An absolute privilege provides complete immunity for defamation, regardless of motive. In contrast, the qualified or conditional privilege is "conditioned upon good motive." *Hester*, 723 S.W.2d at 557.

■ In order to recover for defamation where there is a qualified privilege, the plaintiff must prove actual malice. *Wright*, 945 S.W.2d at 490. Within the category of qualified privilege are statements concerning public officials protected by the "constitutional privilege" recognized in *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Under this privilege, a person making defamatory statements about a public official may be liable for defamation only if there is actual malice.

■ Police officers are considered public officials within the meaning of the *New York Times Co.* decision. *Shafer v. Lamar Publ'g Co., Inc.*, 621 S.W.2d 709, 710–11 (Mo.App.1981). The question, however, is not just whether Plaintiff was a public official, but whether the context in which the statements were made is one to which an absolute privilege should extend. The statements in this case were not made in a judicial, executive, or legislative proceeding. Thus, it appears this Court must determine whether "the communication is provided for and required by law," it was part of a quasi-judicial proceeding, or a strong public policy exists which would justify the application of an absolute privilege.

Missouri courts generally decline to extend absolute privilege to proceedings not fitting within the legislative, executive or judicial categories. *See Hohlt v. Complete Health Care, Inc.*, 936 S.W.2d 223, 224 (Mo.App.1996). For example, in *Wright*, the court determined that only a qualified privilege existed for statements made in a union grievance proceeding, stating at 945 S.W.2d at 492–93:

Neither the [Joint Grievance Committee] nor its functions are established or mandated pursuant to law. It is neither a public body with official duties nor does it render judgments or make decisions of a judicial nature. The Committee does not possess the power to subpoena witnesses or documents. Witnesses that come before the Committee are not required by law to be sworn before testifying and are not subject to perjury. There are no formal rules of evidence and no opportunity for cross-examination. The only record of the proceeding is an unofficial tape recording.[1]

Similar to the proceedings in *Wright*, the Springfield Police Department Internal Affairs Unit investigators cannot subpoena witnesses or documents, the witnesses are not sworn or subject to perjury, and there are no formal rules of evidence or opportunity for cross-examination. Defendant argues that because the investigative body is part of the city government, it is a public body, and because it operates pursuant to official guidelines, its investigative procedures are "procedures required by law." Defendant states that the investigators draw conclusions from the evidence, their procedures are kept confidential, and there is a strong public policy encouraging frankness in such proceedings to maintain corrupt-free police departments. Thus, Defendant claims, statements made in an Internal Affairs Unit investigation merit the protection of an absolute privilege.

The Internal Affairs Unit operates under the Springfield Police Department's standard operating guidelines, which provide that persons filing "unfounded" complaints may be subject to suits for malicious prosecution. Appellant attempts to reconcile this provision with those in the cases of *Hester* and *Hohlt, supra,* both of which held there was a qualified privilege because of statutory provisions. We find

1. *Wright* noted that other jurisdictions extend an absolute privilege to union grievance proceedings based on considerations Missouri courts do not find significant. 945 S.W.2d at 496.

neither of those cases controlling because the procedure adopted by the City of Springfield was not an ordinance or statute enacted by a legislative body.

Finding no Missouri precedent on this specific issue, the trial court relied on cases from other jurisdictions: *Gray v. Rodriguez*, 481 So.2d 1298 (Fla.App.1986); *Miner v. Novotny*, 304 Md. 164, 498 A.2d 269 (1985); *Campo v. Rega*, 79 A.D.2d 626, 433 N.Y.S.2d 630 (1980); *Lewis v. Benson*, 101 Nev. 300, 701 P.2d 751 (1985); and *Putter v. Anderson*, 601 S.W.2d 73 (Tex. Civ.App.1980). Courts in those decisions found that an absolute privilege should apply to complaints made against police officers. Obviously those cases are not binding upon Missouri courts, nor do we find that their reasoning would be persuasive under Missouri standards.

In *Gray*, the complaint procedure found to be quasi-judicial was established by statute, presumably mandated by a legislative body which carefully balanced the interest of the police officer and citizens, unlike the procedure here. *Miner* determined that the complaint procedure was protected by absolute privilege because it preceded a quasi-judicial proceeding providing for a formal hearing, subpoena of witnesses and evidence, and sworn witnesses. *Campo* is a very short opinion and its rationale is not clear. In *Benson*, the appellate court did not decide, as the trial court found, that the procedure was quasi-judicial, but rather the court determined that the complaint against the police officer was absolutely privileged based upon the state's public policy. *Putter* determined that under Texas law the investigative procedure was quasi-judicial in nature.

While an absolute privilege may be appropriate in very limited situations, we do not believe that the public policy encouraging citizens to report police officer misconduct, pursuant to police department regulations which lack the procedural safeguards found in judicial or quasi-judicial proceedings, merits the application of an absolute privilege. An absolute privilege would cloak unsupported and malicious statements of any kind with immunity, without providing recourse to the person defamed. Police officers should not be subject to malicious complaints from which they have no protection.

We determine that a qualified privilege is appropriate in this case. A qualified privilege will protect persons who make good-faith complaints from liability for defamation, without closing all avenues of protection to the police officer. Although we recognize that a qualified privilege might chill some complaints filed without malice, we do not believe, except in very rare instances previously recognized by the Missouri courts, that an absolute privilege should exist.

Summary judgment is reversed and the case is remanded for further proceedings.

CROW, J., and GARRISON, J., concur.